IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PPG INDUSTRIES, INC.,
    Plaintiff,

v.

CENTRAL INDUSTRIAL
MAINTENANCE, INC., and
WESTFIELD INSURANCE COMPANY
    Defendants.

**05cv1193**

ELECTRONICALLY FILED

_____

WESTFIELD INSURANCE COMPANY,
    Counter/ Cross Claims Plaintiff,

v.

PPG INDUSTRIES, INC., and
CENTRAL INDUSTRIAL
MAINTENANCE, INC.,
    Counter/ Cross Claims Defendants

_____

CENTRAL INDUSTRIAL MAINTENANCE, INC.,
    Third Party Plaintiff

v.

ACORDIA OF WEST VIRGINIA, INC.
a West Virginia Corporation,
ACORDIA OF WEST VIRGINIA, INC.
*doing business as* ACORDIA SPECIALTY,
ACORDIA OF WEST VIRGINIA, INC.,
*doing business as* ACORDIA MID-ATLANTIC SPECIALTY, and
ZURICH AMERICAN INSURANCE COMPANY,
    Third Party Defendants.

**Memorandum Opinion**

**March 21, 2006**

**I.  Introduction.**

Before the Court is plaintiff PPG Industries, Inc.'s (PPG's) motion to determine choice of law (Document No. 52), requesting this Court to determine whether West Virginia or Pennsylvania law applies in this diversity case seeking indemnification from Central Industrial Maintenance, Inc. (CIM) on their Agreement for CIM to remove waste materials from PPG's Natrium Plant in West Virginia.  The following facts that will drive this determination are not in dispute, unless otherwise indicated.

**II.  Background**

PPG, a Pennsylvania corporation, entered into an Agreement for On-Site Services with CIM, a West Virginia corporation, on October, 11, 2001, in which CIM contracted to perform certain on-site waste removal services at PPG's Natrium Plant located in New Martinsville, West Virginia.  Westfield Insurance Company (Westfield) is an Ohio corporation who, PPG alleges, provided insurance coverage for the event and time in question.  Formation of the Agreement took place in Pennsylvania; it contained no choice of law or forum selection clauses.  The Indemnification Clause of the Agreement provides, in relevant part, as follows:

> **Indemnification:** [CIM] assumes the risk of all damages, loss, costs and expense, and agrees to indemnify and hold harmless PPG . . . from any and all liability, damage, loss, cost and expense which may accrue to or be sustained by PPG . . . arising out of this Agreement, including for the death of or injury to persons . . . involving [CIM], its employees, agents and representatives sustained in connection with

> performance of services hereunder, arising from any cause whatsoever . . . except to the extent arising out of the sole negligence or willful misconduct of PPG or its employees acting within the scope of their employment.

Agreement, Complaint, Exhibit A, at 1.

During the course of performance of the Agreement, PPG requested CIM to provide transportation services to remove hazardous waste from the Natrium Plant to a waste treatment facility of a non-party, Envirite of Ohio, Inc., located in Canton, Ohio. CIM hired an independent contractor, Emerald Environmental Services, Inc. (Emerald), also a non-party in this suit, to transport the hazardous materials to Envirite's facility. On November 4, 2002, during the course of his employment with Emerald, Edward Coburn sustained serious chemical burn injuries to his left eye while unloading materials from a truck at the Ohio facility.

Mr. Coburn filed a tort claim against Envirite and PPG, and CIM was subsequently made a defendant. In *Coburn v. Envirite of Ohio, Inc., et al.,* Case No. 2003 CV 00452, Portage County, Ohio, Court of Common Pleas, after settlement and dispositions of certain motions between Mr. Coburn and the other parties in the lawsuit, PPG was left as the lone defendant. PPG ultimately settled with Mr. Coburn and his wife for $699,999.00, and incurred substantial attorneys fees and costs.

Following this settlement, PPG sought indemnification from CIM pursuant to the Agreement, but CIM steadfastly refused each request. PPG filed this complaint for indemnification against CIM and Westfield on the basis of diversity of citizenship, alleging breach of contract by CIM and seeking declaratory judgment against Westfield, CIM'S insurer for this event.

PPG moves this Court to choose West Virginia law regarding the prima facie standard of proof in an action for breach of the Agreement to an indemnify. CIM agrees that the choice is between Pennsylvania and West Virginia laws on this threshold prima facie burden issue,[1] but considers Pennsylvania to be the right choice.

### III. Discussion

#### A. General Choice of Law Rules

In diversity of citizenship cases, district courts apply the choice of law rules of the forum state in which the court sits. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941); *St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431 n.3 (3d Cir. 1991). Under Pennsylvania choice-of-law rules, the substantive law to be applied is that of the state which has the most significant interest in having its law applied, a determination informed by examination of significant contacts. *Complaint of Bankers Trust Co.*, 752 F.2d 874, 882 (3d Cir. 1984).

The United States Court of Appeals for the Third Circuit recently summarized the general choice of law principles as follows:

> Under Pennsylvania law, we begin with an "interest analysis" of the policies of all interested states and then -- based on the result of that analysis -- characterize the case as a true conflict, false conflict, or unprovided-for case. *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996); *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 & n. 15 (3d Cir. 1991).
>
> A true conflict exists "when the governmental interests of

---

[1] The laws of Ohio might also be in the competition, but the parties agree that its laws do not conflict with Pennsylvania's on the substantive issue; therefore, the forum state's laws, Pennsylvania's, would be applied over Ohio's since there is no conflict.

> [multiple] jurisdictions would be impaired if their law were not applied." *Lacey*, 932 F.2d at 187 n. 15.  If a case presents a true conflict, Pennsylvania choice-of-law rules "call for the application of the law of the state having the most significant contacts or relationships with the particular issue.*" In re Estate of Agostini*, 311 Pa.Super. 233, 457 A.2d 861, 871 (1983). As explained in the Second Restatement of Conflict of Laws,
>
>> the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.
>
> Restatement (Second) of Conflict of Laws § 6 (1971).
>
> "A false conflict exists if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Lacey*, 932 F.2d at 187.  If there is a false conflict, we must apply the law of the only interested jurisdiction.  *See, e.g., Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897, 899-900 (1966); *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796, 807 (1964).
>
> Finally, an unprovided- for case arises when no jurisdiction's interests would be impaired if its laws were not applied. *Lex loci delicti* (the law of the place of the wrong -- here Pennsylvania) continues to govern unprovided-for cases. *See, e.g., Miller v. Gay*, 323 Pa.Super. 466, 470 A.2d 1353, 1355-56 (1983).

*Budget Rent-A-Car System, Inc. v. Chappell*, 407 F.3d 166, 170 (3d Cir. 2005).

### B.     True Conflict Exists Regarding Prima Facie Proof for Indemnification

This Court must determine whether there is a true conflict between the laws of the competing jurisdictions. *Lucker Mfg. v. Home Ins. Co.,* 23 F.3d 808, 813 (3d Cir. 1994).

In Pennsylvania, "when a cause is settled the record of the action is not sufficient to

establish an indemnitee's claim against the indemnitor and the indemnitor is entitled to a trial by jury and a determination by it as to whether or not liability did, in fact, exist and then, whether or not it follows that the contract of indemnity had been breached." *Martinique Shoes, Inc. v. New York Progressive Wood Heel Co.*, 217 A.2d 781, 783 (Pa.Super. 1966) (*citing M. Shapiro and Son, Inc. v. Warwick*, 189 Pa.Super. 445, 150 A.2d 386 (1959)). A "mere showing by a party seeking indemnity that there was a reasonable possibility that it might have been held liable if it had not settled . . . is not sufficient to recover indemnity; *actual legal liability must be shown*." *Philadelphia Elec. Co. v. Hercules Inc.*, 762 F.2d 303, 317 (3d Cir. 1968) (emphasis added).

The right to indemnity in Pennsylvania "enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation to pay damages occasioned by the negligence of another." *Burbage v. Boiler Engineering & Supply Co.*, 433 Pa. 319, 326, 249 A.2d 563, 567 (1969). However, where a party enters into a voluntary settlement, "it must appear that the party paying was himself legally liable and could have been compelled to satisfy the claim." *Hercules Inc.*, 762 F.2d at 317, citing *Tugboat Indian Co. v. A/S Ivarans Rederi*, 334 Pa. 15, 21, 5 A.2d 153, 156 (1939) (emphasis in original).

This burden of proof would require PPG to prove, prima facie, that it was in fact liable to Mr. Coburn, before proceeding any further with its indemnification claim against CIM.

The law of West Virginia imposes a less stringent evidentiary burden on an indemnitee. In West Virginia, the law is that the "indemnitee should not be required to prove the [underlying case] plaintiff's actual ability to recover the amount paid in the settlement. It is sufficient if the . . . indemnitee proves that he was *potentially liable* to the [underlying case] plaintiff." *Valloric v. Dravo Inc.*, 178 W.Va. 14, 357 S.E.2d 207 (1987) (emphasis added). The "policy of the law

is to encourage settlements." *State ex rel. Evans v. Robinson*, 197 W.Va. 482, 485, 475 S.E.2d 858, 861 (1996), *citing Valloric*, 178 W.Va. at 212 ("to require proof of actual liability is to remove most of the incentive to settle as an indemnitee would be better served to force a plaintiff to prove his case and then enforce the judgment against the indemnitor.").

These competing laws impose a substantially, and substantively, different burden of proof on the indemnitee, PPG, indicating the existence of a true conflict based on the distinct possibility of differing outcomes, depending on which law is chosen. Under Pennsylvania law, if PPG cannot prove that it was actually legally liable to Mr. Coburn, then PPG will not be able to proceed with its claim and West Virginia's policy of encouraging settlements will be frustrated. Pennsylvania law expressly states that a showing of a reasonable possibility of liability is insufficient for indemnification claims to proceed, while West Virginia specifically accepts that "reasonable possibility" as prima facie proof in an indemnity action, in the interest of promoting settlement.

      **C.**    **Conflict is Substantive, Not Procedural**

CIM argues that Pennsylvania's prima facie standard for indemnification must be applied because it is a procedural matter, according to the general rule that where the disputed laws are procedural in nature, the law of the forum state should apply. See *Sun Oil Co. v. Wortman*, 486 U.S. 717, 726 (1988); *Ettelson v. Metropolitan Life Ins. Co.*, 137 F.2d 62 (3d Cir. 1943); *Commonwealth v. Sanchez*, 552 Pa. 570, 575-76, 716 A.2d 1221 (1998) ("In conflicts cases involving procedural matters, Pennsylvania will apply its own procedural laws when it is serving as the forum state. In cases where the substantive laws of Pennsylvania conflict with those of a sister state in the civil context, Pennsylvania courts take a flexible approach which permits

analysis of the policies and interests underlying the particular issue before the court. *See Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796, 805 (1964).").

Pennsylvania conflict of law rules require that a Pennsylvania court apply Pennsylvania's evidentiary sufficiency standard to a claim, regardless of which state's substantive law applies to the claim. *See, e.g., Foley v. Pittsburgh-Des Moines Co*., 363 Pa. 1, 68 A.2d 517, 521 (1949) (law of forum "controls all questions as to burden of proof and whether there is sufficient evidence of negligence and proximate causation to entitle the plaintiff to have the case submitted to the jury."); *Sudol v. Gorga*, 346 Pa. 463, 31 A.2d 119, 120 ("law of the forum determines whether there is sufficient evidence on an issue of fact to warrant its submission to a jury."); *Crawford v. Manhattan Life Ins. Co. of New York*, 208 Pa.Super. 150, 161 n. 2, 221 A.2d 877, 884 n. 2 (1966) ("questions of presumption and burden of proof in this regard are, of course, procedural and to be determined by the law of the forum."); Restatement (Second) of Conflict of Laws § 135 ("The local law of the forum determines whether a party has introduced sufficient evidence to warrant a finding in his favor on an issue of fact . . . .").

However, it is not always a simple task to determine whether the law in question is procedural or substantive. In *Melville v. American Home Assurance Co.*, 584 F.2d 1306, 1310 (3d Cir. 1978), the United States Court of Appeals for the Third Circuit grappled to determine whether the "presumption of suicide" laws of competing states should be considered a substantive or a procedural matter. Finding Pennsylvania's "presumption of suicide" law to be substantive, the Court of Appeals explained: "under Pennsylvania choice of law rules, matters of burden of proof, presumption, and sufficiency of evidence to submit the case to the jury are matters determined by the laws of the forum, . . . [and we agree] with the district court's

conclusion that the presumption against suicide has sufficient substantive import that it would not be routinely labeled as procedural by the Pennsylvania courts."

The Court of Appeals recognized that, in other contexts, Pennsylvania courts had indicated their approval of the Restatement (Second) of Conflict of Laws, *see Elston v. Industrial Lift Truck Co.*, 420 Pa. 97, 216 A.2d 318 (1966), and predicted that "Pennsylvania would also approve and subscribe to the provisions of Restatement II §§ 133, 134 . . . ." *Melville*, 584 F.2d at 1310. Section 133 of the Restatement (Second) of Conflict of Laws states that the "forum will apply its own local law in determining which party has the burden of persuading the trier of fact on a particular issue *unless* the *primary purpose* of the relevant rule of the state of the otherwise applicable law *is to affect decision of the issue rather than to regulate the conduct of the trial*. In that event, the rule of the state of the otherwise applicable law will be applied." Restatement (Second) of Conflict of Laws, § 133 (emphasis added). The comments to section 133 are instructive and support a determination that the rule of law at issue herein is substantive for choice of law purposes:

> a. Scope of section. . . . [T]his Section is concerned with the burden of persuading the trier of fact to make a certain finding or to render a certain verdict as distinguished from the burden of going forward with the evidence (as to which see § 134). All situations involving the burden of persuasion fall within the scope of the present rule. This is true even though a particular statute or rule may be phrased in terms of a "presumption" or of "prima facie evidence."
>
> b. Rationale. Most rules relating to which party has the burden of persuasion are concerned primarily with questions of trial administration. . . . Different considerations prevail in those situations where the relevant rule of the state of the otherwise applicable law goes beyond questions of trial administration and is primarily designed to affect decision of a particular issue. In such situations, the rule of the state of the otherwise applicable law will be applied. On

9

> which side of the line a given rule belongs may present a difficult problem for decision. . . . An example of a rule falling within the latter category is one which establishes the rule of comparative negligence in a relatively narrow area and provides that in such a situation the burden of persuasion as to the issue of contributory negligence shall be on a particular party. More difficulty, on the other hand, will attend the classification of a statute of the state of the otherwise applicable law which involves the burden of persuasion as to the issue of contributory negligence in general. Such a statute will not be applied by the forum if it is interpreted as being concerned primarily with trial administration. It will, by way of contrast, be applied by the forum if it is interpreted as being primarily designed to affect decision of the issue of contributory negligence. The latter interpretation is more likely to be made if the statute was enacted for the purpose of changing a common law rule.

Section 134 of the Restatement (Second) provides: "The forum will apply its own local law in determining which party has the burden of going forward with the evidence on a particular issue unless the primary purpose of the relevant rule of the state of the otherwise applicable law is to affect decision of the issue rather than to regulate the conduct of the trial. In that event, the rule of the state of the otherwise applicable law will be applied." Restatement (Second) of Conflict of Laws, § 134. The comments to that section also support a determination that the prima facie burden in an indemnification action is substantive.

The commentary states that this section is "concerned with rules which require or permit the existence of one fact to be established in the absence of rebutting evidence by proof of the existence of another fact. Rules of this sort are frequently said to create rebuttable presumptions." Restatement (Second) of Conflict of Laws, § 134, comment a. While this could conceivably apply to the rule of law in dispute in this case, the following commentary dispels that conception: "On the other hand, this Section is not concerned with so-called conclusive presumptions which require the trier of fact to find the existence of one fact from proof of the existence of another

> which side of the line a given rule belongs may present a difficult problem for decision. . . . An example of a rule falling within the latter category is one which establishes the rule of comparative negligence in a relatively narrow area and provides that in such a situation the burden of persuasion as to the issue of contributory negligence shall be on a particular party. More difficulty, on the other hand, will attend the classification of a statute of the state of the otherwise applicable law which involves the burden of persuasion as to the issue of contributory negligence in general. Such a statute will not be applied by the forum if it is interpreted as being concerned primarily with trial administration. It will, by way of contrast, be applied by the forum if it is interpreted as being primarily designed to affect decision of the issue of contributory negligence. The latter interpretation is more likely to be made if the statute was enacted for the purpose of changing a common law rule.

Section 134 of the Restatement (Second) provides: "The forum will apply its own local law in determining which party has the burden of going forward with the evidence on a particular issue unless the primary purpose of the relevant rule of the state of the otherwise applicable law is to affect decision of the issue rather than to regulate the conduct of the trial. In that event, the rule of the state of the otherwise applicable law will be applied." Restatement (Second) of Conflict of Laws, § 134. The comments to that section also support a determination that the prima facie burden in an indemnification action is substantive.

The commentary states that this section is "concerned with rules which require or permit the existence of one fact to be established in the absence of rebutting evidence by proof of the existence of another fact. Rules of this sort are frequently said to create rebuttable presumptions." Restatement (Second) of Conflict of Laws, § 134, comment a. While this could conceivably apply to the rule of law in dispute in this case, the following commentary dispels that conception: "On the other hand, this Section is not concerned with so-called conclusive presumptions which require the trier of fact to find the existence of one fact from proof of the existence of another

fact. Such presumptions are in reality rules of substantive law stated in the form of a presumption." Restatement (Second) of Conflict of Laws, § 134, comment a.

New York "prescribes a presumption against suicide which imposes on the party contending that violent death was self-inflicted . . . the burdens of pleading and persuasion as to that contention." *Id.* at 1308.  Pennsylvania law, on the other hand, has no such strong presumption against suicide, but instead merely provides that it is "permissible for the fact-finder to infer, based on common understanding of human nature, that death was not self-inflicted." *Id.* This rule of law was deemed substantive in *Melville* for choice of law purposes.

The Pennsylvania Supreme Court has defined a substantive right as "'a right to equal enjoyment of fundamental rights, privileges and immunities; distinguished from a procedural right.' Black's Law Dictionary 1429 (6th ed.1990). By contrast, procedural law is 'that which prescribes the methods of enforcing rights or obtaining redress for their invasion; as distinguished from the substantive law which gives or defines the right.' *Id*. at 1203." *Sanchez*, 552 Pa. at 576.  In this case, the choice of law will no doubt "affect the decision," and not just by the way that decision is reached, but substantively. It is not merely a method of enforcing rights or obtaining redress for their invasion," but rather involves an evidentiary presumption-- in West Virginia, if you voluntarily pay a settlement, the courts will enforce an indemnification agreement without regard to the underlying merits of the litigation in which the settlement was made.  Application of the more stringent Pennsylvania prima facie standard  -- that the indemnitee must show *actual* legal liability in indemnification cases in order to prevail against the indemnitor -- could effectively stop the proceedings at the outset, even more so than New York's presumption against suicide could have ended that case prematurely.

11

### D. West Virginia Has the Most Significant Relationship

Under Pennsylvania's flexible "interest analysis" approach in contracts cases, *see Chappell*, 407 F.3d at 170, the court will look to the substantive law of the place with the most significant relationship to the parties and the transaction or the 'center of gravity of the contract,' *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205 (3d Cir. 1970), and will make a qualitative appraisal of the relevant states' policies with respect to the controversy. *Melville,* 584 F.2d at 1311. *See Compagnie des Bauxites de Guinee v. Argonaut-Midwest Ins. Co.*, 880 F.2d 685, 688-89 (3d Cir. 1989) ("Pennsylvania has adopted a flexible approach which combines a relationship and interest analysis. *Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964). . . . [T]he *Griffith* test 'takes into account both the grouping of contacts [listed in the Restatement (Second) of Conflict of Laws § 188(2) (1971) ] with the various concerned jurisdictions and the interests and policies that may be validly asserted by each jurisdiction.' *Melville v. American Home Assurance Co.*, 584 F.2d 1306, 1311 (3d Cir.1978).").

In this case, the underlying suit was litigated and settled in Ohio, the contract was formed in Pennsylvania, but the bulk of the performance of CIM's contract with PPG was to and did take place in West Virginia, specifically, at PPG's Natrium Plant in New Martinsville. CIM is a West Virginia company which contracted with a Pennsylvania company, PPG, to provide the services spelled out in the contract, none of which were to take place in Pennsylvania. West Virginia was the "center of gravity" for this contract, and it has both sufficient contacts and sufficient interest in the outcome of this case, and the policies of West Virginia viz a viz indemnification laws are paramount to those of Pennsylvania.

**IV. Conclusion**

For the foregoing reasons, the Court finds that West Virginia law must be the choice to supply the prima facie standard of proof for an indemnification action.

An appropriate order will be entered.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:   All counsel of record as listed below

Thomas M. Parker, Esquire
Andrew T. Hayes, Esquire
Parker, Keiby, Hanna & Rasnick
388 S. Main Street, Suite 402
Akron, OH 44311

Michael J Sweeney, Esquire
Christopher D. Stofko, Esquire
Dickie, McCamey & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA 15222-5402

Christopher T. Yoskosky, Esquire
Dara A. DeCourcy, Esquire
Raymond H. Conaway, Esquire
Zimmer Kunz
600 Grant Street
3300 USX Tower
Pittsburgh, PA 15219

Richard F. Andracki, Esquire
Andracki Law Offices
428 Forbes Avenue
1801 Lawyers Building
Pittsburgh, PA 15222-1922

Mark R. Lane, Esquire
Dell, Moser, Lane & Loughney
525 William Penn Place, Suite 3700
Pittsburgh, PA 15219-1707

Alan T. Silko, Esquire
Levicoff, Silko & Deemer
650 Smithfield Street
Suite 1900
Pittsburgh, PA 15222-3911